# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

FIRST GUARANTY BANK                                   CIVIL ACTION

VERSUS

24-cv-576-SDD-RLB

GREENBRIER HOTEL CORPORATION

## RULING AND ORDER

Before the Court is a Motion to Dismiss, or alternatively, Motion to Transfer[1] filed by Defendant Greenbrier Hotel Corporation ("Greenbrier"). Greenbrier seeks dismissal for lack of personal jurisdiction and improper venue or, alternatively, to transfer this action to the United States District Court for the Southern District of West Virginia. Plaintiff First Guaranty Bank ("FGB") opposed,[2] to which Greenbrier replied.[3]

For the reasons set forth below, Greenbrier's motions[4] are granted in part and denied in part.

## I.    FACTS AND PROCEDURAL BACKGROUND

On July 17, 2024, FGB filed a verified Complaint[5] under diversity jurisdiction[6] against Greenbrier seeking amounts due under a promissory note.[7] On or about

---

[1] Rec. Doc. 21.
[2] Rec. Doc. 28.
[3] Rec. Doc. 29.
[4] Rec. Doc. 21.
[5] Rec. Doc. 1.
[6] FGB is a Louisiana state-chartered bank with "its principal office located" in Hammond, Louisiana. Rec. Doc. 1, ¶ 1. Greenbrier is a West Virginia corporation with its principal place of business in White Sulphur Springs, West Virginia. *Id.* FGB alleges that the amount in controversy exceeds the jurisdictional minimum of $75,000. *Id.* at ¶ 2. Specifically, FGB seeks the principal, interest, late charges, and accrued expenses for Greenbrier's alleged default of its obligations under the promissory note, totaling $36,586,412.22. *Id.* at ¶ 15. The parties do not dispute subject matter jurisdiction. The only issues before the Court are personal jurisdiction over Greenbrier and proper venue. Rec. Doc. 20, pp. 1–2.
[7] Attached and incorporated with the Complaint are copies of the Note (Rec. Doc. 1-2) and the Change Agreement (Rec. Doc. 1-3).

December 22, 2020 (the "Loan Date"), Greenbrier executed and delivered to FGB a promissory note bearing Loan No. *****7794 (the "Note") under which Greenbrier agreed to repay FGB the principal amount of $35,000,000.00 (the "Main Street Loan")[8] together with interest thereon at an indexed variable rate and other certain amounts provided therein.[9] The parties executed a Change in Terms Agreement (the "Change Agreement") (collectively with the Note hereinafter referred to as the "Note") on June 22, 2023, amending the Note to substitute the Secured Overnight Financing Rate ("SOFR") as the interest rate index on the Main Street Loan for the London Interbank Offered Rate ("LIBOR") previously utilized under the original terms of the Note.[10]

FGB alleges that, pursuant to the Main Street Loan and the Note, Greenbrier was not obligated to make payments of either principal or accrued interest through the first anniversary of the Loan Date.[11] On the first anniversary, all interest accrued through that date (December 22, 2021) was to be capitalized and added to the principal amount of the Loan.[12] Thereafter, Greenbrier was obligated to make interest only payments on the monthly Main Street Loan in monthly payments beginning January 22, 2022.[13] In addition

---

[8] The Federal Reserve established the Main Street Lending Program ("MSLP") under the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") to support lending to small and medium-sized for-profit businesses that were in sound financial condition before the onset of the COVID-19 pandemic. Rec. Docs. 1, ¶ 6; 21-1, p. 2 (citing *Policy Tools, Main Street Lending Program*, BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM, https://www.federalreserve.gov/monetarypolicy/mainstreetlending.htm (last visited Sept. 30, 2025)). MS Facilities 2020, LLC ("MS Facilities"), a special purpose vehicle ("SPV") of the Federal Reserve Bank of Boston ("FRBB"), acquired a 95% interest in the Main Street Loan and the Note. Rec. Doc. 1, ¶ 6. FGB alleges that they serve as an administrative agent on behalf of FRBB and MS, and on its own behalf for the remaining 5% interest, in the Note. *Id.* The Federal MSLP is administered by the FRBB, which established the Main Street SPV to purchase loan participations from eligible lenders in any of the twelve Federal Reserve districts. *See Main Street Lending Program,* FEDERAL RESERVE BANK OF BOSTON, https://www.bostonfed.org/supervision-and-regulation/credit/special-facilities/main-street-lending-program.aspx (last visited Sept. 30, 2025). Authority under the MSLP ceased on December 31, 2020, with certain exceptions for outstanding loans and modifications. *See* 15 U.S.C. § 9063.
[9] Rec. Doc. 1, ¶ 5.
[10] *Id.*
[11] *Id.* at ¶ 8.
[12] *Id.*
[13] *Id.*

to the required payment of accrued interest, the Note required Greenbrier to remit repayment of the principal in three installments: (1) on December 22, 2023, in the amount of 15% of the outstanding principal balance of the loan (including any capitalized interest); (2) on December 22, 2024, in the amount of 15% of the outstanding principal balance of the loan (including any capitalized interest); and (3) on the maturity date of December 22, 2025, the final payment was to be paid in the amount equal to the remainder of the outstanding principal balance of the loan together with all remaining unpaid accrued interest, charges, and fees.[14]

FGB alleges the Main Street Loan became delinquent on December 22, 2023, when the first installment payment of 15% of the outstanding principal balance of the loan (including all capitalized interest) was not paid to FGB.[15] FGB alleges Greenbrier has failed and refuses to render payment and is therefore in default of its obligations under the Note.[16] FGB has exercised its rights under the Note to: (1) declare formal default by Greenbrier with regard to the Main Street Loan; (2) accelerate the maturity of the entire unpaid remaining balance of the Main Street Loan; and (3) prospectively to increase the interest rate accruing on the unpaid remaining principal balance of the Main Street Loan, effective as of July 15, 2024, to 21.00% *per annum*.[17]

As of July 15, 2024, a principal of $35,360,403.41 is allegedly remaining due and payable, together with accrued interest of $1,214,506.31, accrued late charges of $4,250.00, and accrued expenses of $7,252.50, for an aggregate total of

---

[14] *Id.* at ¶ 9.
[15] *Id.* at ¶ 10.
[16] *Id.* at ¶ 11.
[17] *Id.*

$36,586,412.22.[18] Interest allegedly continues to accrue at the default rate of 21.00% *per annum* or $20,626.90 *per diem*.[19] FGB seeks a judgment recognizing it as the holder and owner (on its own behalf and on behalf of MS) of the Note, as amended, and a judgment for the alleged amounts plus interest.[20] FGB also seeks costs, expenses, fees and charges, including attorneys' fees.[21]

Greenbrier filed an Answer,[22] asserting various affirmative defenses including lack of personal jurisdiction and improper venue. Greenbrier now seeks dismissal for lack of personal jurisdiction under Rule 12(b)(2) and for improper venue under Rule 12(b)(3).[23] If venue is deemed improper, Greenbrier seeks to transfer the case to the Southern District of West Virginia under 28 U.S.C. § 1406(a).[24] Alternatively, if personal jurisdiction is deemed proper, Greenbrier seeks transfer under 28 U.S.C. § 1404(a).[25]

## II.    LAW AND ANALYSIS

### A.    Rule 12(b)(2)

When a nonresident defendant moves to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of establishing that the court has personal jurisdiction over the defendant.[26] "[T]he court 'may consider the contents of the record before the court at the time of the motion, including "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of

---

[18] *Id.* at ¶ 15.
[19] *Id.*
[20] *Id.* at pp. 5–6.
[21] *Id.*
[22] Rec. Doc. 20.
[23] Rec. Doc. 21-1, pp. 1–2.
[24] *Id.* at p. 4.
[25] *Id.* at p. 17.
[26] *Herman v. Cataphora, Inc.*, 730 F.3d 460, 464 (5th Cir. 2013).

discovery.'"[27] "When considering the host of allegations and evidence, [the court] accept[s] as true 'plaintiff's uncontroverted, nonconclusional factual allegations' and 'resolve[s] all controverted allegations in the plaintiff's favor.'"[28]

A court may exercise personal jurisdiction over a nonresident-defendant only if the forum state's long-arm statute confers personal jurisdiction and the exercise of personal jurisdiction does not exceed the boundaries of due process.[29] The long-arm statute of Louisiana, the forum state here, authorizes the exercise of personal jurisdiction to the extent allowed by the Due Process Clause of the Fourteenth Amendment.[30] A court's exercise of personal jurisdiction over a nonresident-defendant comports with the due process clause when "(1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice."[31]

The first inquiry, into "minimum contacts," is fact intensive, and no one element is decisive; rather, the touchstone is whether the defendant purposely directed his activities towards the forum state, such that he could reasonably foresee being haled into court

---

[27] *Savoie v. Pritchard*, 122 F.4th 185, 190 (5th Cir. 2024) (quoting *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 344 (5th Cir. 2002) (citation omitted)); *see also Rd. Sprinkler Fitters Loc. Union No. 669, U.A., AFL-CIO v. CCR Fire Prot., LLC*, No. 16-448, 2018 WL 3076743, at *4 (M.D. La. June 21, 2018) (citing *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985))).

[28] *Id.* (quoting *Def. Distrib. v. Grewal*, 971 F.3d 485, 490 (5th Cir. 2020) (citation omitted)); *see also Johnston v. Multidata Sys. Intern. Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (citations omitted).

[29] *Dykes v. Maverick Motion Picture Grp., LLC*, No. 08–536, 2011 WL 900276, at *4 (M.D. La. Mar. 14, 2011).

[30] *Id.*

[31] *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001) (citing, inter alia, *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

there.[32] "'Minimum contacts' can be established either through contacts sufficient to assert specific jurisdiction, or contacts sufficient to assert general jurisdiction."[33]

"A federal district court has personal jurisdiction over a nonresident defendant to the same extent as a state court in the state in which the district court is located."[34] General jurisdiction exists "when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial."[35] "Where contacts are less pervasive, a court may still exercise 'specific' jurisdiction 'in a suit arising out of or related to the defendant's contacts with the forum.'"[36]

Specific jurisdiction exists if a nonresident-defendant has "purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities."[37] That is, for a court to exercise specific jurisdiction (1) the defendant must have directed activities or purposely availed itself of the privileges of conducting activities in the forum state; (2) the cause of action must arise out of the defendants' forum-related contacts; and (3) the court's exercise of jurisdiction must be fair and reasonable.[38] Merely contracting with a resident of the forum state is insufficient

---

[32] *Luv N' Care Ltd. v. Insta–Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

[33] *Alpine View Co. Ltd. v. Atlas Copco, A.B.*, 205 F.3d 208, 215 (5th Cir. 2000) (citing *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994)).

[34] *Walk Haydel & Assoc., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 242 (5th Cir. 2008).

[35] *Springboards to Educ., Inc. v. Hamilton Cty. Read 20*, No. 16-2509, 2017 WL 3023489, at *2 (N.D. Tex. July 14, 2017) (quoting *Marathon Oil Co. v. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999)).

[36] *Luv N' Care Ltd. v. Insta–Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (quoting *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)).

[37] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).

[38] *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). *See also Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004) (finding that contracting with a Texas based company, initiating and contemplating a long-term business relationship with that company, communicating with the company concerning the execution of the contract, and wiring money to Texas did not indicate that the defendant purposefully availed itself to the privileges of doing business in Texas); *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773 (5th Cir. 1986) (finding that contracting with a Texas based company, initiating and contemplating a long-term business relationship with that company, communicating with the company

to subject the nonresident to the forum's jurisdiction.[39]

"If the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable."[40] For that determination, a court analyzes five factors: "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies."[41]

### B. Motion to Dismiss Due to Improper Venue under Rule 12(b)(3) and under 28 U.S.C. § 1406

Generally, when a party asserts an improper venue defense under Fed. R. Civ. P. 12(b)(3), the Court shall dismiss, or if in the interest of justice, transfer the action to any district or division in which it could have been brought.[42] "Upon objection to venue, the burden is on the plaintiff to establish that venue is proper, but the Court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff."[43] The Court is not limited to considering the facts pleaded in the Complaint.[44] Where, as here, the suit is based solely on diversity of citizenship, the Court looks to 28 U.S.C. § 1391 to determine whether venue is proper.  Venue in a civil action is proper in:

---

concerning the execution of the contract, and wiring money to Texas did not indicate that the defendant purposefully availed itself to the privileges of doing business in Texas); *Stuart*, 772 F.2d 1185 (finding no indication of specific jurisdiction where the defendant contracted with Texas residents directed letters and phone calls to Texas).

[39] *Burger King*, 471 U.S. at 478.

[40] *Seiferth*, 472 F.3d at 271.

[41] *Luv N' Care*, 438 F.3d at 473. *See also Burger King*, 471 U.S. at 476–77.

[42] 28 U.S.C. § 1406(a).

[43] *Walters v. T.H. Hill Assocs., Inc.*, No. 12-723, 2013 WL 5375488, at *1 (M.D. La. Sept. 19, 2013) (citing *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 448–49 (5th Cir. 2008)).

[44] *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009).

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.[45]

"The first two paragraphs of § 1391(b) define the preferred judicial districts for venue in a typical case, [while] the third paragraph provides a fallback option."[46] When venue is improper, the district court can either dismiss the action, "or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."[47]

### C.    Transfer Under 28 U.S.C. § 1404(a)[48]

28 U.S.C. § 1404(a) permits a district court to transfer any civil action "[f]or the convenience of the parties and witnesses, in the interest of justice" to any other district "where it might have been brought or to any district or division to which all parties have consented."[49] The United States Supreme Court has held that the application of § 1404(a) principles is the appropriate means by which to analyze a valid forum-selection clause requiring transfer to another federal district court.[50] However, "[s]uch transfer is only authorized . . . if the movant establishes that: (1) venue is proper in the transferor district; (2) venue is proper in the transferee district; and (3) the transfer will serve the

---

[45] 28 U.S.C. § 1391(b)(1)–(3).
[46] *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 56 (2013).
[47] 28 U.S.C. § 1406(a).
[48] The Supreme Court has stated that §1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system. *Atl. Marine*, 571 U.S. at 60.
[49] 28 U.S.C. § 1404(a) (emphasis added).
[50] *Atl. Marine*, 571 U.S. at 63.

convenience of the parties, the convenience of the witnesses, and the interests of justice."[51]

### D.    Jurisdiction as to Greenbrier

#### 1.    The Court lacks general jurisdiction over Greenbrier.

"A court may assert general personal jurisdiction in the state where the defendant is 'essentially at home.'"[52] "A corporate defendant is essentially 'at home' in two paradigm forums: (1) the corporation's place of incorporation and (2) its principal place of business."[53]

Greenbrier is incorporated in West Virginia, with its principal place of business located at 101 Main Street W, White Sulphur Springs, West Virginia.[54] FGB disputes only the issue of specific personal jurisdiction. Thus, the Court finds that it lacks general personal jurisdiction over Greenbrier.

#### 2.    FGB fails to establish specific jurisdiction over Greenbrier.

Greenbrier argues FGB cannot establish the first prong in the Court's three-prong analysis to determine specific jurisdiction because Greenbrier does not have sufficient minimum contacts with Louisiana to exercise specific jurisdiction.[55] In support, Greenbrier submits the affidavit of James ("Jay") C. Justice, III ("Jay Justice"), Chairman of the Board of the Greenbrier Hotel Corporation.[56] Jay Justice attests that, in 2020, Greenbrier

---

[51] *Louis v. Leidos, Inc.*, No. 24-350, 2025 WL 350238, at *3 (M.D. La. Jan. 30, 2025) (internal citations omitted) (quoting *MAPP, LLC v. Floor & Décor Outlets of Am., Inc.*, No. 23-45, 2024 WL 944227, at *7 (M.D. La. Feb. 21, 2024)).
[52] *Miller v. Chevron USA, Inc.*, No. 23-327, 2024 WL 966886, at *2 (M.D. La. Mar. 6, 2024) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).
[53] *Id.* (citing *Seville v. Maersk Line, Ltd.*, 53 F.4th 890, 895 (5th Cir. 2022); *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)).
[54] Rec. Docs. 1, p. 1; 21-1, pp.1, 6; 21-2, p. 3.
[55] Rec. Doc. 21-1, p. 7.
[56] Rec. Doc. 21-2, ¶¶ 12.

contacted Marshall Reynolds ("Reynolds") to inquire about MSLP loans.[57] Greenbrier asserts that FGB discussed the MSLP loans with Greenbrier in West Virginia and that the parties negotiated and executed the loan in West Virginia.[58] Jay Justice attests that Reynolds is a West Virginia resident who owned a West Virginia bank, Premier Bank, Inc., with which Greenbrier previously conducted business.[59] Reynolds is also the largest stockholder and Chairman of the Board of FGB.[60] Reynolds introduced Greenbrier to FGB as a potential lender under the MSLP.[61] Greenbrier had no relationship with FGB prior to Reynolds' introduction between Greenbrier and FGB.[62]

Jay Justice attests that at all times during Greenbrier's discussions with FGB related to the MSLP loan, Reynolds remained the primary point of contact for FGB.[63] Jay Justice further attests that Greenbrier was aware that FGB had offices in Bridgeport, West Virginia and reasonably believed that any loan tendered by FGB would be serviced and administered from FGB offices in Bridgeport, rather than a branch in a different state.[64]

Specifically, Jay Justice attests that, at the time the loan was closed, Darshan Patel ("Patel"), a commercial lender at FGB, traveled to West Virginia to witness the signing of

---

[57] *Id.* at ¶ 3.

[58] Rec. Doc. 21-1, p. 8 (citing Rec. Doc. 21-2, ¶¶ 13, 15, 16–17).

[59] Rec. Doc. 21-2, ¶ 4. Premier Bank was not a MSLP approved lender. *Id.* at ¶ 5. The Court takes judicial notice that Reynolds is listed as the Chairman of the Board of a multibank holding company, Premier Financial Bancorp, Inc., and has a listed address as the reporting person of P.O. Box 4040, Huntington, West Virginia, 25728. *See* WEST VIRGINIA SECRETARY OF STATE, *https://apps.sos.wv.gov/business/corporations/organization.aspx?org=178765* (last visited Sept. 17, 2025). Additionally, the Court takes judicial notice of Reynolds listing under the Louisiana Secretary of State website as an office for FGB Partners, L.L.C. with an address of 2450 First Avenue, Huntington, West Virginia 25729. *See* LOUISIANA SECRETARY OF STATE NANCY LANDRY, *https://coraweb.sos.la.gov/CommercialSearch/CommercialSearchDetails.aspx?CharterID=1851762_9DB 49FAC3D* (last visited Sept. 17, 2025).

[60] Rec. Doc. 21-2, ¶ 6.

[61] *Id.* at ¶ 7.

[62] *Id.* at ¶ 9.

[63] *Id.* at ¶ 10.

[64] *Id.* at ¶¶ 11–12.

the loan documents and to visit the borrower's location.[65] Jay Justice further attests that at no time did anyone from Greenbrier travel to Louisiana to discuss or negotiate the loan from FGB, nor did Greenbrier execute the Note in Louisiana.[66] All in-person discussions and negotiations regarding the loan occurred in West Virginia, and Greenbrier executed the Note in West Virginia.[67] In December of 2023, FGB's Chief Executive Officer Alton Lewis ("Lewis") and Chief Lending Officer Randy Vicknair ("Vicknair") traveled to the Greenbrier in West Virginia to discuss a potential restructuring of the loan.[68] Greenbrier further submits that it has no offices, officers, or employees in Louisiana.[69] Jay Justice attests that Greenbrier does not conduct business in Louisiana and is not registered to do so.[70] Jay Justice also attests that Greenbrier has never contacted other banking institutions or lenders in Louisiana for the purpose of securing a loan under MSLP or otherwise.[71] Greenbrier argues that FGB's Complaint lacks allegations challenging these facts.[72]

Greenbrier argues that the only link to Louisiana is that FGB opted to administer the loan from its offices in Louisiana, rather than its offices in another state, including FGB's offices in Kentucky, Texas, or West Virginia.[73] Greenbrier points out that the only allegation in the Complaint regarding its contacts with Louisiana is that the subject loan was "made by Plaintiff acting through its branch located in . . . Louisiana."[74] Greenbrier

---

[65] *Id.* at ¶ 13.
[66] *Id.* at ¶ 15.
[67] *Id.* at ¶ 16.
[68] *Id.* at ¶ 17.
[69] Rec. Docs. 21-1, p. 8; 21-2, ¶ 20.
[70] Rec. Doc. 21-2, ¶ 21.
[71] *Id.* at ¶ 22.
[72] Rec. Doc. 21-1, p. 8.
[73] *Id.* at p. 9. Jay Justice attests that the only reference to the loan being serviced in Louisiana appears in the small print within the Note. Rec. Doc. 21-2, ¶ 14.
[74] Rec. Doc. 21-1, p. 9 (citing Rec. Doc. 1, ¶ 7).

argues that, even assuming that to be true, it is insufficient to establish specific jurisdiction over Greenbrier.[75] It contends that Greenbrier's only connection to Louisiana is FGB and FGB's decision to administer the loan from Louisiana.[76] Greenbrier argues that such connection is nothing more than a random, fortuitous, or attenuated contact between Greenbrier and Louisiana.[77]

Greenbrier further contests specific jurisdiction even if Greenbrier tendered the Note to FGB in Louisiana, was supposed to make payments to FGB in Louisiana, and engaged in communications related to the Note with FGB in Louisiana.[78] Greenbrier argues that a plaintiff cannot be the only link between the defendant and the forum.[79] Greenbrier asserts that it must have purposefully directed its activities toward Louisiana, and it did not.[80] Greenbrier states that simply having a loan from a bank in Louisiana is insufficient, on its own, to establish that a defendant purposely directed its activities toward the State.[81]

Greenbrier distinguishes *Amin v. Kyros Energy, LLC*,[82] wherein the Court found the nonresident defendant had sufficient minimum contacts with Louisiana.[83] Greenbrier asserts it did not contact FGB to solicit a loan in Louisiana.[84] Greenbrier argues that FGB

---

[75] *Id.*

[76] *Id.*

[77] *Id.* (citing *Walden v. Fiore*, 571 U.S. 277, 286 (2014)).

[78] *Id.* (citing *Freudensprung*, 379 F.3d at 344 (noting that the Fifth Circuit has "repeatedly held that the combination of mailing payments to the forum State, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant")).

[79] *Id.* at p. 8.

[80] *Id.* at p. 10.

[81] *Id.* at pp. 10–11 (citing *Gulf Coast Bank and Tr. Co. v. Designed Conv. Systs.*, No. 16-412, 2016 WL 4939113, at *4 (M.D. La. Sept. 14, 2016); *Amin v. Kyros Energy, LLC*, No. 17-56, 2017 WL 2701931, at *4 (M.D. La. June 22, 2017)).

[82] 2017 WL 2701931, at *4.

[83] Rec. Doc. 21-1, p. 11.

[84] *Id.*

discussed opportunities for a loan under the MSLP in West Virginia.[85] Because FGB has a branch there, Greenbrier contends it reasonably assumed any loan from FGB would be administered and serviced from that branch, not a branch in another state.[86] Greenbrier further argues it did not solicit any other lenders in Louisiana, or direct any other activity toward Louisiana.[87]

Greenbrier admits the Note includes a choice-of-law provision in favor of Louisiana law but contends that the Note also states it is governed by federal law "and, to the extent not preempted by federal law, the laws of the State of Louisiana[.]"[88] Greenbrier states that, unlike the defendant in *Amin*, it did not originally insist that West Virginia law control, only to later agree to application of Louisiana law.[89] Greenbrier contends it never agreed to this Court's personal jurisdiction.[90]

As the party invoking the Court's jurisdiction, FGB "bears the burden of establishing that [Greenbrier] has the requisite minimum contacts" with Louisiana to justify jurisdiction.[91] FGB submits multiple declarations and documents.[92] FGB contends that in the summer of 2020, Greenbrier requested a MSLP loan from Premier Bank, which Premier Bank considered, and based on financial considerations, denied.[93] Thereafter, Reynolds attests that James ("Jim") C. Justice, II ("Jim Justice")[94] contacted him for his

---

[85] *Id.*
[86] *Id.*
[87] *Id.*
[88] *Id.* (citing Rec. Doc. 1-2).
[89] *Id.*
[90] *Id.*
[91] *Savoie*, 122 F.4th at 190 (quoting *Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, 24 F.4th 491, 495 (5th Cir. 2022) (citation omitted)).
[92] *See* Rec. Docs. 28-2 through 28-21.
[93] Rec. Doc. 28, p. 3 (citing Rec. Doc. 28-2, ¶ 3). Michael Mineer ("Mineer"), Senior Vice President at Premier Financial Bancorp, Inc., attested that Premier Bank considered and denied a MSLP loan to Greenbrier in early summer 2020. Rec. Doc. 28-2, ¶¶ 1–3.
[94] Jim Justice is Jay Justice's father.

assistance to procure a MSLP loan.[95] Reynolds attests that while he was at his office in Huntington, West Virginia, he received an impromptu call from Jim for the assistance.[96] Reynolds attests FGB is a Louisiana state-chartered bank with its principal office in Hammond, Louisiana, where he has maintained an office throughout his tenure as Chairman.[97] He also attests he works from offices in multiples states.[98] Reynolds responded to Jim Justice's request by referring him to Vicknair.[99] He further attests that, after this single, unsolicited telephone conversation, all of his conversations with Greenbrier regarding the loan request occurred via telephone conference, during which Vicknair and Lewis were physically present with him in FGB's Hammond, Louisiana office.[100]

FGB contends that all substantive communications regarding the loan terms and conditions occurred with FGB representatives that were physically located together in Louisiana.[101] Vicknair attests that he participated in telephone conversations with Greenbrier representatives, including Jay Justice, Robert Pruett ("Pruett"), and Adam C. Long ("Long").[102] Patel attests that Vicknair notified him about the Greenbrier loan request in or about December 2020.[103] Patel avers he was FGB's Relationship Manager for the loan.[104] He assimilated the information that he received during email exchanges with Jay

---

[95] Rec. Doc. 28-3, ¶ 6.
[96] Id.
[97] Id. at ¶¶ 3–4.
[98] Id. at ¶ 5.
[99] Id. at ¶ 7.
[100] Id. at ¶ 8.
[101] Rec. Doc. 28, p. 3 (citing Rec. Docs. 28-3, ¶ 8; 28-4, ¶¶ 15–18). Reynolds and Vicknair attest that after Greenbrier's initial request, all telephone conversations with them were while they were physically present with Lewis at the FGB Hammond location.
[102] Rec. Doc. 28-4, ¶ 15.
[103] Rec. Doc. 28-14, ¶ 5.
[104] Id. at ¶ 6.

Justice and Summer Harrison ("Harrison") leading to the closing of the loan into Greenbrier's loan package.[105] Patel attests that, while physically present in Louisiana, he executed the Credit Agreement, the Addendum, and the Notice on behalf of FGB.[106] He states that he did not travel to West Virginia to witness the signing of Greenbrier's loan package by Greenbrier representatives, and he did not visit the Greenbrier location in connection with the closing of the loan.[107] Vicknair attests that it was not until the loan became significantly past due that he traveled with Lewis to meet with Greenbrier representatives in West Virginia.[108] Vicknair states that FGB coordinated the post-default trips to meet with Greenbrier in West Virginia through Reynolds because Greenbrier was not responsive otherwise.[109]

FGB argues that Greenbrier and its owners and officers, including Jim Justice's children Jay and Dr. Jillean ("Jill") Leigh Justice, are sophisticated parties with business acumen who knew that their company was procuring a substantial loan from a Louisiana bank.[110] FGB argues that other key Greenbrier players include Jill Justice's husband Adam C. Long ("Long") and Stephen W. Ball ("Ball"), members of the West Virginia State Bar.[111]

FGB points out that the loan documents repeatedly state FGB is located in Louisiana. Furthermore, the Note provides that Louisiana law will govern.[112] FGB submits

---

[105] *Id.* at ¶¶ 7–9.
[106] *Id.* at ¶ 11.
[107] *Id.* at ¶ 12.
[108] Rec. Doc. 28-4, ¶¶ 24–25.
[109] *Id.* at ¶ 26.
[110] Rec. Doc. 28, pp. 4–6.
[111] *Id.* at p. 6.
[112] *Id.*

in support a Credit Agreement,[113] the Note,[114] an Addendum to the Note,[115] a Resolution

to Borrow,[116] a Notice of Final Agreement,[117] and a Disbursement Request,[118] all of which

specify Louisiana choice of law. FGB states that Jill Justice executed most of the Loan

documents, which reference a Louisiana address for FGB at least ten times.[119] Those

documents show FGB's Louisiana address,[120] including a Louisiana address for FGB for

written communications or payments.[121] FGB further argues Ball joined Jill Justice in

executing the Corporate Resolution to Borrow/Grant Collateral (the "Resolution"), which

also provides a Louisiana address for FGB.[122] FGB also notes that the email

communications confecting the loan documents repeatedly identify the FGB location in

Denham Springs, Louisiana.[123] These documents reflect the FGB Denham Springs

address in the signature blocks of the FGB employees.[124] FGB further argues that

Harrison directed email and phone communication to FGB in Hammond to speak to an

FGB Denham Springs employee.[125] FGB also states that Harrison electronically

transmitted the loan documents to FGB Denham Springs, where they were received and

reviewed by FGB Denham Springs employees.[126] In proceeding forward with the loan,

FGB argues that "the only reasonable conclusion is that Greenbrier principals did not care

---

[113] Rec. Doc. 28-5.
[114] Rec. Doc. 28-6.
[115] Rec. Doc. 28-7.
[116] Rec. Doc. 28-8.
[117] Rec. Doc. 28-10.
[118] Rec. Doc. 28, pp. 6–29; Rec. Docs. 28-2 through 28-20.
[119] Rec. Doc. 28, p. 6 (citing Rec. Docs. 28-5; 28-6; 28-7; 28-8; 28-10; 28-12).
[120] Rec. Docs. 1-2, p. 5; 28-5, p. 1; 28-6, p. 1; 28-7, p. 1; 28-8, p. 1; 28-10, p. 1; 28-12, p. 1.
[121] Rec. Doc. 28-6, p. 1.
[122] Rec. Doc. 28, p. 6 (citing Rec. Doc. 28-8).
[123] *Id.* at p. 7 (citing Rec. Docs. 28-15; 28-19).
[124] *Id.* Nothing is referenced about Louisiana otherwise in the content of the communications.
[125] *Id.* (citing Rec. Doc. 28-20).
[126] *Id.*

that the significant Loan was from a Louisiana bank."[127]

However, the mere foreseeability that a party might perform many of its duties in the forum state, standing alone, does not create jurisdiction.[128] Yet, foreseeability would support a finding of jurisdiction where it is combined with the fact that "the forum state was 'clearly the hub of the parties' activities.'"[129] "The 'foreseeability analysis that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should *reasonably* anticipate being haled into court there."[130]

FGB acknowledges that it could not issue loans from West Virginia in December 2020, as Vicknair attests.[131] FGB did not add a Loan Production Office in West Virginia until late 2021, after it registered with the West Virginia Secretary of State.[132] Vicknair attests that the FDIC authorized FGB to accept deposits in West Virginia in 2023 and that in the second quarter of 2024, FGB established a physical branch in West Virginia.[133]

FGB disputes that there were any "in-person . . . negotiations" in West Virginia[134] or that Greenbrier could have been "aware that FGB had offices in Bridgeport, West Virginia or "reasonably believed" that the loan would be serviced and administered in West Virginia.[135] FGB further argues that Jay Justice's statement that Reynolds remained

---

[127] *Id.* at pp. 13–15 (citing *Hibernia Nat'l Bank v. Carner*, 758 F. Supp. 382, 385-86 (M.D. La. 1991) (finding that defendant who was a partner in a Louisiana partnership with considerable means and business sophistication purposefully availed himself of the protection of Louisiana law and the benefit of transacting business through a partnership in Louisiana)).

[128] *Moncrief Oil Intern. Inc. v. OAO Gazprom*, 481 F.3d 309, 313 (5th Cir. 2007); *see also Panda Brandywine Corp.*, 253 F.3d at 869 (quoting *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 212 (5th Cir. 1999) ("[Foreseeable injury alone is not sufficient to confer specific jurisdiction, absent the directions of specific acts toward the forum.")).

[129] *Id.* at 312 (quoting *Miss. Inter. Exp., Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1008–09 (5th Cir. 1982)).

[130] *Panda Brandywine Corp.*, 253 F.3d at 869 (quoting *Burger King*, 471 U.S. at 474 (emphasis added)).

[131] Rec. Doc. 28, p. 7 (citing Rec. Doc. 28-4, ¶¶ 6–11).

[132] *Id.*

[133] Rec. Doc. 28-4, ¶¶ 9–10.

[134] Rec. Doc. 28, p. 10 (citing Rec. Doc. 21-2, ¶ 16).

[135] *Id.* (citing Rec. Doc. 21-2, ¶¶ 11–12).

a "primary point of contact for FGB" on the loan is incorrect, pointing to Vicknair's attestation that, after Reynolds referred Jim Justice to Vicknair, he and Patel became the primary points of contact for FGB.[136] But FGB then states Vicknair attested FGB had no choice but to later coordinate communications through Reynolds because Greenbrier representatives were non-responsive otherwise.[137] FGB provides Reynolds' and Vicknair's affidavits show that all meaningful discussions regarding Greenbrier's request, including the anticipated terms and conditions of the loan, were by telephone.[138]

The assertions and evidence presented by FGB however merely establish FGB's contacts with the forum, not Greenbrier's. It is undisputed that Greenbrier has no offices, officers, employees or property in Louisiana.[139] There is no evidence that Greenbrier conducts business in Louisiana or is registered to do so, other than FGB's allegations regarding the Note and related communications, which the Court finds are insufficient minimum contacts.[140] FGB contends that Patel executed the loan documents on behalf of FGB in Louisiana and argues that Greenbrier through Harrison "caused the Loan documents executed by Greenbrier to be electronically delivered to FGB-Denham Springs."[141] FGB's actions of executing documents in Louisiana, however, is not the test. "The relationship between the defendant and forum State 'must arise out of contacts that the defendant *himself* creates with the forum State.'"[142] FGB does not dispute that all referenced documents were executed by Greenbrier outside of Louisiana.[143] Moreover,

---

[136] *Id.* at p. 11 (citing Rec. Doc. 28-4, ¶ 20).
[137] *Id.* at pp. 11–12 (citing Rec. Doc. 28-4, ¶ 26).
[138] *Id.* at p. 13 (citing Rec. Docs. 28-3; 28-4).
[139] Rec. Doc. 21-1, p. 8; Rec. Doc. 21-2, ¶ 20; Rec. Doc. 28.
[140] Rec. Doc. 21-2, ¶ 21; Rec. Doc. 28.
[141] Rec. Doc. 28, pp. 10, 16.
[142] *Rainey v. J&S Truck Sales, L.L.C.*, 614 F. Supp. 3d 293, 300 (M.D. La. 2022) (citing *Walden*, 571 U.S. at 284).
[143] Rec. Doc. 28, pp. 19–20.

the alleged default giving rise to FGB's claims occurred in West Virginia, from which Greenbrier allegedly failed to remit payments to FGB under the Note. Where a "plaintiff later feels the economic effects of the injury" is not the test; rather, the focus of the "substantial party of events" inquiry is on the actions or omissions of the defendant.[144]

The mere fact that Greenbrier contracted with a resident of Louisiana is insufficient to establish minimum contacts.[145] This includes a combination of mailing payments to Louisiana, engaging in communications related to the execution and performance of the Note, and the existence of the Note between nonresident Greenbrier and Louisiana resident FGB.[146] The "'minimum contacts' analysis looks to the defendant's contact with the forum State itself, not the defendant's contacts with persons who reside there."[147] "An exchange of communications in the course of developing and carrying out a contract also does not, by itself, constitute the required purposeful availment of the benefits and protections of [the forum state's] law."[148] "Otherwise, jurisdiction could be exercised based only on the fortuity that one of the parties happens to reside in the forum state."[149] Therefore, the assertion that the documents and email correspondence repeatedly include a Louisiana address for FGB bears little weight.

Likewise, Greenbrier's actions of communicating with FGB's representatives in Louisiana and sending documents for the execution of the loan are insufficient to establish

---

[144] *Gray Cas. and Sur. Co. v. Lebas*, No. 12-2709, 2013 WL 74351, at *2 (E.D. La. Jan. 17, 2013) (finding that the "fact that plaintiff expects to later suffer economic consequences as a result of the alleged [injury], which presumably would be felt here in plaintiff's home district, is not an 'event[] or omission[] giving rise to the claim'" as it does not form a "'substantial part' of the events or omissions giving rise to the claim and therefore cannot serve as a basis for venue")).

[145] *See Freudensprung*, 379 F.3d at 344; *see also Moncrief Oil Int'l, Inc.*, 481 F.3d at 311.

[146] *Id.*; *see also Holt Oil & Gas Corp.*, 801 F.2d at 777–78.

[147] *Walden*, 571 U.S. at 285.

[148] *Renoir v. Hantman's Assocs., Inc.*, 230 F. App'x 357, 360 (5th Cir. 2007) (citing *Holt Oil & Gas Corp.*, 801 F.2d at 778).

[149] *Id.*

minimum contacts with Louisiana to support the exercise of personal jurisdiction over Greenbrier. It is undisputed that Greenbrier did not travel to Louisiana at any time to discuss or procure the loan from FGB or to execute the Note.[150] Whether Greenbrier did or did not enter the forum state, however, is not dispositive of personal jurisdiction. Here, it is undisputed that Greenbrier initiated the search for a loan.[151] However, Greenbrier sought out Reynolds in West Virginia requesting a loan with Premier Bank under the MSLP, not FGB in Louisiana.[152] Reynolds admits he was contacted by Jim Justice while he was at his office in West Virginia for assistance with obtaining a MSLP loan for Greenbrier.[153] Reynolds admits that he had leadership roles with multiple businesses and that he works from offices in multiple states.[154] Notably absent is any mention of Reynold's residency or any attestation concerning his West Virginia residency.[155] Reynolds referred Greenbrier to Vicknair at FGB after Greenbrier could not obtain the loan at Premier Bank.[156] Additionally, Vicknair attests that after the loan became past due, he traveled with Lewis to meet with Greenbrier representatives in West Virginia and attests that FGB coordinated post-default trips to meet with Greenbrier in West Virginia through Reynolds.[157]

It appears a case involving default of a MSRP loan under the CARES Act is one of first impression in this District and in the Fifth Circuit.[158]

---

[150] Rec. Doc. 21-2, ¶ 15; Rec. Doc. 28, pp. 19–20.
[151] Rec. Doc. 21-2, ¶ 3; Rec. Doc. 28-2, ¶ 3.
[152] *Id.*
[153] Rec. Doc. 28-2, ¶¶ 4–8.
[154] *Id.* at ¶ 5.
[155] *Id.*
[156] Rec. Doc. 21-2, ¶¶ 3–10; Rec. Doc. 28-3, ¶¶ 6–8.
[157] Rec. Doc. 28-4, ¶¶ 25–26.
[158] The parties did not point to any Fifth Circuit cases, and the Court found none. The Court found one factually similar case, *First Service Bank v. World Aircraft, Inc.*, No. 24-20, 2024 WL 3404604 (S.D. Miss.

The cases cited by FGB are distinguishable. In those, the nonresident defendant-initiated contact with the forum lender. In this case, the original solicited lender who was affiliated with a Louisiana bank initiated the contact.

In *Amin*, the parties negotiated a promissory note by defendant and a personal guaranty by the President and CEO, individually and on behalf of the defendant company.[159] The defendant in *Amin* contacted other Louisiana residents seeking investors.[160] The defendant in *Amin* also agreed to a change in the choice-of-law provision from Maryland to Louisiana, and the record reflected that the President and CEO explicitly agreed to the jurisdiction of the Middle District of Louisiana over any resulting litigation from the note and guaranty.[161] Here, there is no third party or guaranty referenced or evidenced in the record. And unlike the nonresident defendant in *Amin*, Greenbrier did not agree to this forum, there is no forum selection clause, and Greenbrier did not solicit the loan from FGB in Louisiana.

In *Central Progressive Bank v. Kuntz*, the nonresident defendants executed a promissory note in favor of a Louisiana bank.[162] The court found that the requisite minimum contacts were present where the defendants personally solicited the Louisiana bank to lend them money for their business; negotiated the lending documents, including

---

Jul. 12, 2024), involving a default action on a term note and guaranty on a loan by a 5% owner of an MSLP loan pursuant to the Master Participation Agreement between the lender and the MSLP. However, jurisdiction and venue were not at issue, as the Arkansas participating lender filed the action in the United States District Court for the Southern District of Mississippi, Southern Division, the alleged proper venue and jurisdiction due to the defendants' residence in the district and a substantial part of the property that was the subject of the action being situated in the district, despite the lender asserting the guarantors intentionally breached the contract arising under Arkansas state law. There, the court had diversity jurisdiction over the Arkansas state-chartered bank which was an Arkansas citizen and the defendants-citizens of Mississippi.

[159] *Amin*, 2017 WL 2701931, at *1.

[160] *Id.*

[161] *Id.* at *3–4.

[162] *Cent. Progressive Bank v. Kuntz*, No. 08-4147, 2008 WL 5264260, at *1 (E.D. La. Dec. 17, 2008).

the note, numerous change in terms agreements, and commercial guaranties in favor of the Louisiana bank; and delivered the documents to the bank in Louisiana.[163] The payments on the agreements and guaranties were to be made to the bank in Louisiana.[164]

The Fifth Circuit's holding in *Holt Oil & Gas Corp. v. Harvey* is particularly instructive. There, the defendant's contacts with the forum (Texas) included (1) entering into a contract with a Texas corporation, (2) sending joint operating agreements to Texas, (3) sending checks to Texas, and (4) engaging in "extensive telephonic and written communication" with the Texan plaintiff.[165] Those contacts were insufficient.[166]

Here, accepting the "uncontroverted allegations" of the Complaint as true, and construing any disputed facts in favor of FGB, the Court finds that Greenbrier's alleged contacts are insufficient to establish personal jurisdiction.[167] FGB's assertions as to Greenbrier's minimum contacts amount to merely the fact that Greenbrier contracted with an out-of-state party – here Louisiana, which does not in itself establish sufficient minimum contacts with Louisiana.[168] Greenbrier being aware that email signature blocks in electronic correspondence referenced FGB's Denham Springs, or that Greenbrier's electronic communications were with FGB representatives located in Louisiana, does not constitute purposeful availment by Greenbrier.[169] FGB fails to make a sufficient showing

---

[163] *Id.* at *4.
[164] *Id.*
[165] *Holt Oil & Gas Corp.*, 801 F.2d at 777–78.
[166] *Id.* at 778; *see also Freudensprung*, 379 F.3d at 344.
[167] *See Johnston*, 523 F.3d at 609; *Libersat v. Sundance Energy, Inc.*, 978 F.3d 315, 322 (5th Cir. 2020) (held that the court may not exercise specific jurisdiction where defendant's contacts with the forum included assuming a contract with a Louisiana resident, sending division orders to Louisiana, sending checks to Louisiana, and engaging in written communications with plaintiffs who lived in Louisiana).
[168] *See Gulf Coast Bank & Trust Co.*, 717 F. App'x at 399.
[169] *See Freudensprung*, 379 F.3d at 344.

that Greenbrier reached out to the forum state and purposefully directed activities at the forum.

FGB argues that Greenbrier knew it was conducting business and obtaining a loan from a Louisiana entity and that Greenbrier readily agreed to a Louisiana choice of law provision, such that it purposefully availed itself of the privileges and benefits of the laws of Louisiana.[170] FGB argues that where a sophisticated business entity such as Greenbrier agrees to a "Louisiana choice of law provision executed in the Note," the entity "should have foreseen the potential for this Court's jurisdiction."[171]

However, the fact that the Note contains a choice-of-law provision that Louisiana law will govern is merely a factor to be considered and is not considered sufficient alone to confer jurisdiction.[172] The Fifth Circuit holds that "[c]hoice-of-law provisions and forum-selection clauses are relevant to [a] minimum contacts analysis, but they are not dispositive."[173] A plaintiff "must still satisfy the standard minimum-contacts analysis."[174] "When a party contractually submits to the court's power for a 'limited purpose,' it does 'not waive its personal jurisdiction defense' for issues falling outside that purpose."[175] Moreover, a choice of law provision does not *per se* contemplate a choice of forum.[176]

---

[170] Rec. Doc. 28, pp. 19–21.

[171] *Id.* at pp. 15–16 (citing *Amin*, 2017 WL 2701931, at *5–6).

[172] *Burger King*, 471 U.S. at 482; *see also Renoir*, 230 F. App'x at 360 (alteration in original) (quoting *Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 873 (5th Cir. 1999); *Sayers Constr., LLC. v. Timberlake Constr., Inc.*, 976 F.3d 570, 574 (5th Cir. 2020)).

[173] *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 542 (5th Cir. 2019) (citing *Pervasive Software v. Lexware GmBH & Co. KG*, 688 F.3d 214, 233 (5th Cir. 2012) (internal citation omitted)).

[174] *Id.*

[175] *Conti 11. Container Schiffarts-GMBH & Co. KG M.S., MSC Flaminia v. MSC Mediterranean Shipping Co. S.A.*, 91 F.4th 789, 801 (5th Cir. 2024) (citing *Halliburton Energy Servs., Inc.*, 921 F.3d at 541).

[176] *See NBD Bank v. Kersey*, No. 99-1851, 2000 WL 64307, at *6 (E.D. La. Jan. 25, 2000).

"Such a provision in and of itself does not evince anticipation of being haled into a Louisiana court."[177]

Here, the provision in the Note providing "Lender's Rights Upon Default" makes no mention of Louisiana.[178] Under "GOVERNING LAW," the Note states that it "will be governed by federal law applicable to the Lender and, to the extent not preempted by federal law, the laws of the State of Louisiana without regard to its conflicts of law provisions" and that "[the] Note has been accepted by Lender in the State of Louisiana."[179] However, as noted, the Note is governed by federal law and is only controlled by Louisiana law to the extent it is not preempted by federal law. Numerous federal laws govern the Note at issue, including federal lending laws and the CARES Act.[180] Any material loan modifications (i.e. the "Core Rights Act"), including restructuring, must be approved by the SPV through a formal request from the lender administrating the MSLP loan.[181] There is also no real formal guidance under the CARES Act on the handling of MSLP loan defaults such as the instant Note. Instead, the statutory framework and related provisions address loan modifications, restructuring, and taxpayer protections in cases of potential defaults, but falls short of detailing a procedural mechanism for defaults.[182] Additionally, FGB argues that the Note includes that the loan "is being made under the terms and provisions of La. R.S. 9:3509, *et seq.*"[183] The Note also provides under "APPLICABLE LENDING LAW" that "[t]o the extent not preempted by federal law, this

---

[177] *Id.* (holding a choice-of-law provision at best may be said to represent one of the nonresident defendant's contacts, representing one contact to consider under the totality of the circumstances under a Ruler 12(b)(2) consideration).
[178] Rec. Doc. 1-2, p. 2.
[179] *Id.*
[180] *See id.*; 15 U.S.C. § 9041, *et seq.*
[181] *Id.*
[182] *See* 15 U.S.C. §§ 9042, 9063.
[183] Rec. Doc. 28, p. 6 (citing Rec. Doc. 28-6, p. 2).

business or commercial loan is being made under the terms and provisions of La. R.S. 9:3509, *et seq.*"[184]

Parties may limit litigation to a particular venue through the use of a forum selection clause. Yet, the Note does not contain a forum selection clause.[185] Here, the choice-of-law provision is insufficient alone for the Court to exercise personal jurisdiction over Greenbrier.[186]

Because Greenbrier has insufficient minimum contacts with Louisiana, the Court finds it lacks specific jurisdiction over Greenbrier. As such, the Court need not consider whether the exercise of personal jurisdiction would be unfair or unreasonable. Plaintiff fails to meet its burden to make a *prima facie* showing of personal jurisdiction. Thus, Defendants' motion to dismiss for lack of personal jurisdiction[187] is granted.

### E.    Dismissal or Transfer

The Court lacks personal jurisdiction over Greenbrier. Thus, venue is improper in the Middle District of Louisiana pursuant to § 1391(b)(1) under the "residential venue" provision. "Where venue is improper, the district court should generally dismiss the case. But the Court retains discretion to transfer it to a proper venue if such a transfer would serve 'the interest of justice.'"[188]

Here, because venue is improper, the Court will apply § 1406 to Greenbrier's request to transfer should the Court not dismiss under Rule 12(b)(2). Courts can dismiss

---

[184] Rec. Doc. 1-2, p. 2.

[185] *Id.*; Rec. Doc. 20, p. 20. Notably, the cited statute deals solely with interest rates on commercial and business loans on default.

[186] *See Stuart*, 772 F.2d at 1196 (finding that the mere existence of a choice-of-law provision, standing alone or when considered alongside other alleged contacts, was insufficient to confer personal jurisdiction over the defendant).

[187] Rec. Doc. 21.

[188] *Seville*, 53 F.4th at 894 (citing 28 U.S.C. §1406(a)).

claims against a defendant when personal jurisdiction is lacking. But in that situation, courts also have discretion to transfer a case, even *sua sponte*, under 28 U.S.C. § 1631 and § 1406(a), upon concluding that venue is improper and the interests of justice favor transfer.[189]  As the parties agree, the United States District Court for the Southern District of West Virginia is a proper venue to hear the parties' disputes. In the interest of justice, the Court will transfer FGB's action under § 1406(a) rather than dismiss.[190]

Thus, Greenbrier's Motion to Dismiss[191] is granted in part to the extent the Court lacks personal jurisdiction and venue and denied in part to the extent it seeks dismissal. Greenbrier's alternative Motion to Transfer[192] is granted in part as to transfer under § 1406(a) and denied in part as moot under § 1404(a) due to lack of proper venue in this District.

## III.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss[193] is **GRANTED IN PART** for lack of personal jurisdiction and venue and is **DENIED IN PART** to the extent that it seeks dismissal.

**IT IS FURTHER ORDERED** that Defendants' Alternative Motion to Transfer[194] is **GRANTED IN PART** to the extent that the Court, in its discretion transfers this action

---

[189] *See Franco v. Mabe Trucking Co.*, 3 F.4th 788, 795–96 (5th Cir. 2021) (Sections 1631 and 1406(a) "can function together rather than as alternative avenues for transfer" when "there is both a lack of jurisdiction and a lack of proper venue and the interests of justice weigh in favor transfer rather than dismissal.").

[190] Generally, "courts conclude that it is in the interest of justice to transfer to a proper forum rather than to dismiss the litigation." 14D Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3827 (4th ed. 2024).

[191] Rec. Doc. 21.

[192] *Id.*

[193] *Id.*

[194] *Id.*

under 28 U.S.C. §1406(a) to the United States District Court for the Southern District of West Virginia. Defendants' alternative motion is otherwise **DENIED IN PART AS MOOT** as to transfer under 28 U.S.C. §1404(a) due to lack of proper venue.

        **IT IS FURTHER ORDERED** that this action shall be **TRANSFERRED** to the United States District Court for the Southern District of West Virginia.

        **IT IS SO ORDERED.**

        Signed in Baton Rouge, Louisiana, on this 30th day of September, 2025.


_____

**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**